# IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| In re: | § | CASE NO. 10-50713 |
| | § | |
| GULF FLEET HOLDINGS, INC., et. al., | § | CHAPTER 11 |
| | § | |
| Debtors. | § | (Jointly Administered w/ Case Nos. 10-50714, 10-50715, 10-50716, 10-50717, 10-50718, 10-50719, 10-50720, 10-50721, 10-50722, 10-50723, 10-5042) |
| | § | |
| | § | |
| | § | |
| | § | |
| MICHAEL A. HILLMAN, et al. | § | ADVERSARY NO. 11-05006 |
| | § | |
| vs. | § | |
| | § | |
| H.I.G. CAPITAL, LLC, H.I.G. GULF FLEET ACQUISITION, LLC, H.I.G. GP-II, INC., H.I.G. CAPITAL PARTNERS IV, L.P., H.I.G. ADVISORS IV, LLC., GULF FLEET TIGER HOLDINGS, INC., BRIGHTPOINT CAPITAL PARTNERS MASTER FUND, L.P., GULF FLEET TIGER ACQUISITION, LLC, GULF FLEET FINANCING, LLC, ANTHONY TAMER, JEFF ZANARINI, JONATHON FOX, AND STEADFAST INSURANCE COMPANY | § § § § § § § § § § | |

## DEFENDANTS H.I.G. CAPITAL, LLC, H.I.G. GULF FLEET ACQUISITION, LLC, H.I.G. GP-II, INC., H.I.G. CAPITAL PARTNERS IV, L.P., H.I.G. ADVISORS IV, LLC., GULF FLEET TIGER HOLDINGS, INC., GULF FLEET TIGER ACQUISITION, LLC, GULF FLEET FINANCING, LLC, ANTHONY TAMER, JEFF ZANARINI, AND JONATHON FOX'S MOTION TO DISMISS FIRST AMENDED COMPLAINT-IN-INTERVENTION AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants, H.I.G.

Capital, LLC ("HIG"), H.I.G. Gulf Fleet Acquisition, LLC ("HIG GFA"), H.I.G. GP-II, Inc.,

H.I.G. Capital Partners IV, L.P. ("HIG Capital"), H.I.G. Advisors IV, LLC. ("HIG Advisors"),

Gulf Fleet Tiger Holdings, Inc. ("GF Tiger Holdings"), Gulf Fleet Tiger Acquisition, LLC ("GF

Tiger Acquisition"), Gulf Fleet Financing, LLC ("GF Financing"), and Anthony Tamer, Jeff Zanarini, and Jonathon Fox (together the "Individual Defendants"), move on the following grounds for an Order dismissing the Trustee's First Amended Complaint-in-Intervention (Rec. Doc. No. 54) ("Amended Complaint").

## PRELIMINARY STATEMENT

This is the Trustee's second attempt to blame Defendants for the failure of Gulf Fleet Holdings, Inc. and its affiliates (collectively "Gulf Fleet" or the "Debtors"), which operated a fleet of vessels to support oil and gas exploration and production in the Gulf of Mexico and other locations until the worldwide recession decimated oil and natural gas prices. The Trustee continues to rely on empty rhetoric and conclusory statements to allege that, following a leveraged buyout in May 2007, Defendants somehow misused the Debtors for their own benefit. In addition to the fatal pleading defects set forth below, the allegations of the Amended Complaint make clear that the Trustee's theory of liability is absurd. The Trustee alleges that "HIG" (the entity that it alleges to be the buyer in the 2007 LBO Transaction) somehow created the "perfect investment vehicle" in order to reap profits at the expense of Gulf Fleet. But, at the same time, the Amended Complaint alleges that Gulf Fleet, the company that HIG is alleged to have bought, was insolvent from the moment of HIG's purchase. Allegations of this type (that a party walked away with millions as a result of a bad LBO which left the company insolvent) are typically made against a seller (in this case that would be Mr. Hillman) not the buyer of an allegedly worthless business. In an effort to gloss over this (and other) glaring inconsistencies, the Trustee attempts to advance a makeshift theory that "HIG" entered into this transaction in order to earn fees to which it was entitled under the terms of the LBO. This makes no sense. Under the Trustee's theory, "HIG" purchased an insolvent company, on which it lost over $20

million (far more than any creditor), all in order to secure fees (the vast majority of which were never collected) that, in total, would have amounted to less than 15% of "HIG's" losses. The Trustee has an odd view of the "perfect investment."

In addition to being based on an absurd premise, the Amended Complaint, like the Original Complaint before it, is inadequately plead and falls far short of the requirements of the Federal Rules of Civil Procedure. The Trustee's Original Complaint was a shotgun pleading purporting to state thirteen counts against eight defendants under a host of different laws and legal theories. The Trustee lumped multiple defendants, transactions and theories into single counts without any effort to specify which defendants took what allegedly wrongful actions and when. Faced with Defendants' Motion to Dismiss, the Trustee amended. But instead of fixing the Original Complaint's fundamental defects, by setting forth facts on which each claim against each defendant is based, the Trustee simply doubled down on its original approach and used the Amended Complaint as an opportunity to add even more parties, transactions, and legal theories into each count. Nowhere does the Amended Complaint specify who is alleged to have done what (other than to generally allege that each of the 13 parties the Trustee includes in its definition of "HIG Defendants" engaged in all of the wrongful conduct set forth in the Amended Complaint). For these reasons the Trustee's pleading remains deficient, and it should be dismissed. [1]

## ARGUMENT

I.    **THE AMENDED COMPLAINT STILL FAILS TO SATISFY *TWOMBLY'S* PLEADING STANDARD.**

To survive a motion to dismiss, a plaintiff must allege <u>facts</u> sufficient "to raise a right to

---

[1] For purposes of this Motion to Dismiss, Defendants accept the Trustee's allegations as true for purposes of the current Motion to Dismiss only. Should this action proceed past the pleading stage, Defendants will prove that the material allegations of the Amended Complaint are false.

relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 2009 WL 1361536, at *13 (U.S. May 18, 2009) (confirming that the heightened pleading standard announced in *Twombly* applies in all civil actions). A complaint also cannot group all of the defendants into "one wrongdoing monolith" and force the defendants to discern who is alleged to have done what. *In re CLK Energy Partners*, 2010 WL 1930065, at * 7 (W.D. La. May 12, 2010). To the contrary, the complaint must allege facts identifying which specific defendant is alleged to have taken which specific act. *In re Am. Intern. Refinery*, 402 B.R. 728, 738-39 (Bkrtcy. W.D. La. 2008) (complaint failed to satisfy *Twombly* because it referred to defendants collectively and did not "identify each defendant's role in any fraudulent conduct.").

The Trustee fails to satisfy this standard in the Amended Complaint, which again lacks essential factual allegations and instead relies on conclusory statements in an attempt to attribute liability to multiple different defendants. As discussed in detail below, the Amended Complaint does not allege such simple matters as which defendant is included in which count and on what basis. Thus, the Amended Complaint fails to even apprise Defendants of what claims they need respond to, let alone satisfy the heightened requirements of *Twombly*.

## II.     THE TRUSTEE'S CAUSES OF ACTION EACH FAIL TO STATE A CLAIM.

### a.     Count 1 Fails to State a Claim for Fraudulent Transfer.

Pursuant to 11 U.S.C. §§ 544, 548, 550 and La. Civ. Code Ann. Art. 2036, the Trustee again seeks in Count 1 to recover for multiple unrelated alleged fraudulent transfers (Am. Complaint ¶¶ 76-83). The Trustee also includes within Count 1 of the Amended Complaint an

"alternative claim" pursuant to Delaware's fraudulent transfer act seeking to avoid even more transactions (*id.* ¶¶ 84-92). Under either theory, however, the Trustee's claims fail.

### 1. The Trustee Has Failed to State a Claim Under Federal Bankruptcy Law or Louisiana Law.

11 U.S.C. § 544(b) allows the Trustee to void transfers as provided by state law where it is alleged that a creditor exists that could have avoided the transfer. *See In re Liprie*, 2012 WL 1144614, at *8-9 (Bankr. W.D. La. Apr. 4, 2012); *Matter of Leonard*, 125 F. 3d 543, 545 (7th Cir. 1997). To avoid a transfer under Louisiana law, a plaintiff must allege the transfer (1) was made after the right of a creditor arose, and (2) caused or increased the debtor's insolvency. *See* La. Civ. Code Ann. art. 2036; *Traina v. Whitney Nat. Bank*, 109 F. 3d 244, 246 (5th Cir. 1997).

The Trustee can avoid a transfer under 11 U.S.C. § 548 if the debtor makes the transfer with actual intent to defraud creditors or where the transfer constructively defrauds creditors. *See* 11 U.S.C. § 548. Constructive fraud requires the Trustee to allege that the debtor received less than reasonably equivalent value in exchange for the transfer, and (1) was insolvent on the date of the transfer or became insolvent as a result of the transfer; (2) was engaged in, or about to engage in, a transaction for which it had unreasonably small capital; or (3) intended to incur, or believed it would incur, debts beyond its ability to pay as they matured. *Id.*

#### i. *The PSA and CSA.*

The Trustee alleges that Gulf Fleet made certain payments to HIG pursuant to the terms of a Professional Services Agreement (the "PSA") and a Consulting Services Agreement (the "CSA") entered into at the time of the 2007 LBO (Am. Complaint ¶¶ 33, 80-81). Because the facts set forth on the face of the Amended Complaint make clear that those payments were made pursuant to the terms of an existing contractual obligation, they are payments made on account of an antecedent debt and not a fraudulent transfer. *See* 11 U.S.C. § 548 (d)(2)(A) (defining value

to include satisfaction of an antecedent debt). Moreover, to the extent the Trustee were to argue that the Debtors' execution of the PSA and CSA was itself a fraudulent transfer, that claim would be time barred as those agreements were entered into more than three years prior to the Debtors' petition date.

### ii.   *Equipment, Materials and Labor Related to Gulf Tiger.*

The Trustee next alleges that GF Tiger Acquisition received a fraudulent transfer because Gulf Fleet provided "at least $1 million in equipment, materials, and labor to Thoma-Sea" in connection with Thoma-Sea's construction of a vessel known as the *M/V Gulf Tiger* (*id.* ¶ 80). This claim fails because the Trustee's allegations plainly show that any transfer was made to Thoma-Sea, not GF Tiger Acquisition. The Trustee also fails to adequately allege that Gulf Fleet did not receive reasonably equivalent value for the alleged transfer. To the contrary, the Amended Complaint makes clear that GF Tiger Acquisition paid Gulf Fleet $8 million for an assignment of Gulf Fleet's right to the Construction Contract (*id.* ¶ 51). At the time, Gulf Fleet had only made a $4 million deposit on the contract. Thus, even if the Trustee's $1 million valuation of the equipment, materials and labor allegedly provided by Gulf Fleet is accepted, the transaction still generated a net profit of at least $3 million for the debtors. (*id.*). Moreover, in the event the value of the vessel increased to the point where it was in Gulf Fleet's interests to do so, Gulf Fleet retained the absolute right to purchase the vessel from GF Tiger Acquisition by returning the $8 million (*See* Option Agreement, dated June 27, 2008).[2] The Trustee does not even attempt to explain how Gulf Fleet did not receive reasonably equivalent value.

---

[2] A true and correct copy of the Option Agreement is attached hereto as Exhibit 1. Because this agreement is part of the Assignment Agreement, which is referenced in and is central to the Trustee's Complaint, the Court may consider it on a motion to dismiss. *See Maloney Gaming Mgmt. v. St. Tammany Parish*, 2011 WL 5903498, at *3 (5th Cir. November 23, 2011) ("[A] court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.").

### iii.    *The $4 Million Loan.*

The Trustee next alleges that "[e]ven though undercapitalized and insolvent, Gulf Fleet repaid a $4 million insider loan . . . used for the acquisition of the Gulf Sun." (Am. Complaint ¶ 80). This allegation is clearly insufficient to state a fraudulent transfer claim. The Trustee does not allege that the transaction increased Gulf Fleet's insolvency or that Gulf Fleet did not receive reasonably equivalent value for the transfer. To the contrary, the Amended Complaint alleges the payment was on account of an antecedent debt (*id.* ¶ 80). Again, satisfaction of existing indebtedness is not a fraudulent transfer.[3] *See* 11 U.S.C. § 548 (d)(2)(A) (defining value to include satisfaction of an antecedent debt). Thus, the Trustee fails to state a claim.

### iv.    *Legal Fees and Business Expenses.*

The Trustee next alleges that Gulf Fleet paid HIG over $500,000 for legal fees and expenses incurred in connection with the LBO and other unidentified transactions, as well as paid the Individual Defendants for unspecified business and travel expenses (Am. Complaint ¶¶ 80-81). Again, the Trustee's vague and conclusory allegations are insufficient. While the Amended Complaint now includes a list of "Reimbursable Out of Pocket Expenses," there are still no factual allegations showing to which of the "HIG Defendants" Gulf Fleet allegedly made these payments or for what specific purpose (*id.*). Nor is there any fact alleged about any specific reimbursement that could support an inference that it was for less than reasonably equivalent value.

### v.    *The $2.9 Million Promissory Note.*

The Trustee finally claims that a $2.9 promissory note allegedly given by Gulf Fleet to GF Financing constitutes a constructive and intentional fraudulent transfer (Am. Complaint ¶

---

[3] Satisfaction of an antecedent debt can, under some circumstances, create a preference claim. However, such a claim would be barred by the 1 year statute of limitations. *See* 11 U.S.C. § 547.

80). The Trustee, however, has not adequately alleged an intentional fraudulent transfer. Indeed, while the Trustee repeats the formulaic words that the "transfer was made with the intent to hinder" creditors, the Trustee alleges no facts to support this conclusion (*id.*). Accordingly, the Trustee fails to satisfy the pleading requirements of *Twombly* and Rule 9(b). *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ."); *In re Am. Intern. Refinery*, 402 B.R. at 738 ("Rule 9(b) applies to fraudulent transfer claims based upon allegations of actual fraud").

### 2. The Trustee Has Failed to State a Claim Under Delaware Law.

Within Count I, the Trustee attempts to state an "alternative claim" under Delaware law alleging that the CSA, PSA and a "deal fee" allegedly paid pursuant to the LBO were fraudulent transfers (Am. Compl. ¶¶ 84-92.) This claim fails, however, because the applicable Louisiana statute of limitations bars the Trustee's claim.

While the Trustee apparently pleads this "alternative claim" in an effort to avoid the fact that the claim is time barred under Louisiana law, the effort was for naught. As the Fifth Circuit has recognized, choice of law principles do not apply "to questions of prescription." *Crase v. Astroworld, Inc.*, 941 F.2d 265, 266 (5th Cir. 1991). Instead "Louisiana courts customarily apply the law of the forum to the issue of limitations . . . ." *Id.* As discussed above, the limitations period for a revocatory action under Louisiana law may not exceed three years from the date of the act. *See* La. Civ. Code Ann. art. 2041. Thus, because the LBO, CSA and PSA were all entered into in May 2007, more than three years prior to the bankruptcy filing, the Trustee's avoidance claims are time barred, even if Delaware substantive law applies. *Id.*

### b. Count 2 Fails to State a Claim for Recharacterization.

In the Amended Complaint, the Trustee continues to rely on 11 U.S.C. § 105(a) to seek recharacterization (from debt to equity) of the $2.9 million note, another $5.5 million note

provided by Gulf Fleet to GF Financing, and "HIG's $700,000" contract claim based on the PSA and CSA (Am. Complaint ¶ 93-¶99). However, as discussed in Defendants' prior Motion to Dismiss, the Fifth Circuit has rejected the use of 11 U.S.C. § 105(a) for such purposes. *See In re Lothian Oil, Inc.*, 650 F. 3d 539, 542-544 (5th Cir. 2011) (finding that recharacterization is not authorized by § 105(a)). Rather, the Fifth Circuit has held that recharacterization is only allowed under 11 U.S.C. § 502(b) and must be pled under applicable state law (*id.*). The Trustee makes no attempt to allege a claim under § 502(b) (Am. Complaint ¶¶ 93-99). Thus, Count 2 fails to state a claim. *See In re CLK Energy Partners, LLC*, 2010 WL 1930065, at *4 (W.D. La. May 12, 2010) (dismissing where trustee failed to identify the applicable law on which he was proceeding).

Further, courts generally consider a multitude of factors for determining whether an instrument is debt or equity, including (1) the name given to the debt instrument; (2) the presence of a maturity date, (3) the presence of interest; (4) the right to enforce payment of principal and interest; and (5) the security for the advances. *See Estate of Mixon v. United States*, 464 F.2d 394, 402 (5th Cir. 1972); *In re Autostyle Plastics, Inc.*, 269 F. 3d 726 (6th Cir. 2001). The Trustee makes no attempt to explain how any of these elements support recharacterization. To the contrary, Paragraph 64 of the Amended Complaint clearly shows that the promissory notes were titled as debt instruments, had maturity dates, incurred interest, and were enforceable (although subordinate to senior debt) (Am. Complaint ¶ 64). The Trustee's conclusory allegation that "[w]hile the loans stated they were promissory notes, they were not intended by either party to be valid lending obligations" cannot overcome these objective factors. Thus, the Trustee fails to state a claim for recharacterization.

**c.    Count 3 Fails to State a Claim for Simulation.**

In Count 3, the Trustee seeks to have the $2.9 million note and the $5.5 million note

treated as equity or annulled as relative simulations. Under Louisiana law, a relative simulation occurs where the parties enter into an agreement, but have a mutual understanding that the agreement is to have an effect other than that stated. *Johnson v. Unopened Succession of Alfred Covington, Jr.*, 969 So.2d 733, 741 (La. App. 2 Cir. 2007). However, "the law is clear: a transaction will not be set aside as a simulation if any consideration supports the transaction because the reality of the transference is thus established." *Id.* (emphasis added); *Pounds v. Yancy*, 224 so. 2d 1, 5-6 (La. App. 1 Cir. 1969) ("[W]here any consideration passes…no matter how small, the transaction cannot be held a simulation."). Here, the Amended Complaint shows on its face that consideration was given for the notes. Indeed, the Amended Complaint plainly alleges that GF Financing loaned Gulf Fleet the $5.5 million stated in the note and that the $2.9 million note was given in satisfaction of Gulf Fleet's existing obligations under a Factoring Agreement (Am. Complaint ¶ 63). Thus, Count 3 fails to state a claim for simulation. *Id.*; *see Waterbury v. Waterbury*, 496 So.2d 1374, 1377 (La. App. 3 Cir. 1986) (no simulation where party gave consideration for transaction by forgiving an existing debt); *Brown v. Womack*, 362 F. Supp. 1110, 1112 (M.D. La. 1973) ("It is the well settled jurisprudence of this state that when the actual consideration, no matter how inadequate, has been paid…the transaction is not a simulated sale.").

### d. Counts 5-7 Fail to State Claims for Breach of Fiduciary Duty and Aiding and Abetting.

Counts 5-7 purport to state claims for "Breach of Fiduciary Duty," "Breach of Duty and Tort," and "Aiding and Abetting Breach of Fiduciary Duty" against HIG and the Individual Defendants based on allegations that the Individual Defendants, as directors of Gulf Fleet, and HIG, as a controlling shareholder or party in control, owed duties to the creditors while Gulf Fleet was in the zone of insolvency (Am. Complaint at ¶¶ 109-110). The Trustee's claims again

fail because he has pled them under the wrong law and because he has not properly alleged either the existence of fiduciary duties or a breach of such duties.

### 1. The Trustee Improperly Relies on Louisiana Law.

The Trustee's claims again fail because he relies on the wrong law. Gulf Fleet is a Delaware corporation and, thus, the duties of its officers and directors are governed <u>only</u> by Delaware law. *See D & J Tire, Inc. v. Hercules Tire & Rubber Co.*, 598 F. 3d 200, 204 (5th Cir. 2010) ("Louisiana law requires that the law of the place where the corporation was incorporated [governs] disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties"); *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F. 3d 377, 385 n. 7 (5th Cir. 2009) (same). The Trustee's new allegations in the Amended Complaint that several of the Debtor entities are Louisiana entities and that "the most significant relationship" is with Louisiana are inapposite (Am. Compl. ¶¶ 107-108). Indeed, the Debtor entities listed as being Louisiana entities are not the subject of a single substantive allegation in the Amended Complaint (*id.*). Further, the Individual Defendants are not alleged to have been officers or directors of such entities, only of Gulf Fleet, which is a Delaware corporation (*id.* ¶¶ 17-19). Accordingly, Delaware law applies. *See D & J Tire, Inc.*, 598 F. 3d at 204; *Torch Liquidating Trust*, 561 F. 3d at 385 n. 7.

### 2. The Trustee Failed to Properly Allege the Existence of Fiduciary Duties or a Breach of such Duties.

A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty. *See Heller v. Kiernan*, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002). Moreover, Delaware's Business Judgment Rule provides that the "acts of directors are presumptively acts taken in good faith and inspired for the best interests of the corporation . . . ." *Warshaw v. Calhoun*, 221 A. 2d 487, 493 (Del. 1966);

*Brehm v. Eisner*, 746 A.2d 244, 264 (Del. 2000) ("Courts do not measure, weigh, or quantify director's judgments," and "do not even decide if they are reasonable in this context"). To overcome the presumption, a plaintiff must allege specific facts supporting his claims. The Trustee has not met this burden with respect to either element of a fiduciary duty claim.

First, Delaware law provides that a company's directors owe fiduciary duties to the company's creditors only when the company reaches the point of insolvency – meaning insolvency in fact. *See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007); *Prod. Res. Group LLC v. NCT Grp., Inc.*, 863 A.2d 772, 790-91 (Del. Ch. 2004) (same); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 790 (Del. Ch. 1992) (finding that "fiduciary duties to creditors arise when one is able to establish the fact of insolvency"). The Trustee, however, continues to allege that the Individual Defendants owed fiduciary duties to Gulf Fleet's creditors "when the company was in the zone of insolvency" (Am. Compl. ¶ 109). But the "zone of insolvency" theory has been expressly rejected by Delaware courts and cannot support the existence of fiduciary duties. *See In re CLK Energy Partners*, 2010 WL 1930065, at *9 ("Recent Delaware decisions have also rejected claims based on duties to corporate creditors when a corporation approaches the 'zone of insolvency.'") (*citing Gheewalla*, 930 A.2d 92).

Second, the Trustee again fails to allege facts showing how each defendant breached a particular fiduciary duty. Rather, the Amended Complaint lumps "HIG, HIG GFA (and related HIG Subsidiaries), and the HIG Employees" into one allegation and claims they breached their fiduciary duties based on some unknown involvement in at least 13 bulleted transactions (Am. Complaint ¶ 111). There are no factual allegations as to which Defendant is alleged to have participated in which transaction, in what manner the particular defendant participated, how or why the alleged transaction constitutes a breach, or when the alleged transaction occurred (*id.*).

Further, the Trustee repeatedly alleges – either directly or in substance – that the Defendants' actions "deepened the insolvency" of Gulf Fleet (Am. Complaint ¶¶ 111, 118-119). Delaware courts, however, have "eliminated deepening insolvency as a cause of action and as an independent ground for damages." *See In re CLK Energy Partners*, 2010 WL 1930065, at *9 (*citing Trenwick Am. Litig. Trust*, 906 A. 2d 168); *Torch Liquidating Trust*, 561 F. 3d at 391 n. 16 (5th Cir. 2009) (recognizing that Delaware courts have rejected deepening insolvency as a cause of action); *In re SI Restructuring, Inc.*, 532 F. 3d 355, 363-364 (5th Cir. 2008) (same)). Accordingly, the Trustee has failed to allege a breach of fiduciary duty and Counts 5-7 should be dismissed.[4]

### e.   Count 8 Fails to State a Claim for a Delictual Action or Conversion.

In Count 8, the Trustee alleges that HIG committed delictual acts under Louisiana law and/or conversion under Delaware law by causing Gulf Fleet to (1) provide $1 million in equipment and services in connection with the *Gulf Tiger*, (2) pay over $500,000 in legal fees for HIG, (3) execute the $2.9 million note; and (4) pay over $1 million under the CSA/PSA (Am. Complaint ¶ 126). Each of these allegations fails for the same simple reason: the Trustee has failed to allege that HIG deprived Gulf Fleet of any specific moveable or chattel, as opposed to the mere payment of money. *See Goodrich v. E.F. Hutton Grp., Inc.*, 542 A. 2d 1200, 1203 (Del. Ch. 1988) (holding that as with other jurisdictions that have addressed the issue, no Delaware court has...recognized a cause of action for conversion of money, as opposed to goods."); *Dual Drilling Co. v. Mills Equip. Inv., Inc.*, 721 So. 2d 853, 857 (La. 1998) (a delictual action is "grounded on the unlawful interference with the ownership or possession *of a movable*

---

[4] Count 7 is for aiding and abetting and it is axiomatic that no such claim can exist where the underlying tort fails. *See Brinckerhoff v. Enbridge Energy Co., Inc.*, 2011 WL 4599654, at *11 (Del. Ch. September 30, 2011) ("A claim for aiding and abetting a breach of duties...requires an underlying breach.").

and is frequently termed an action for 'conversion' in Louisiana.") (emphasis added).  Thus, Count 8 should be dismissed.

f.   **Counts 9 and 10 Fail to State Claims for Unjust Enrichment and Quantum Meruit.**

Counts 9 and 10 seek equitable relief under Louisiana, Delaware, and Florida law for (1) the $1 million in equipment and services Gulf Fleet allegedly provided to Thoma-Sea in connection with the *Gulf Tiger* transaction, (2) the $500,000 in legal fees Gulf Fleet allegedly paid for HIG in connection with the LBO, and (3) any payments made under the PSA and CSA (Am. Complaint ¶¶ 130-132).[5]  Under Louisiana law, a claim for unjust enrichment requires that the plaintiff allege, among other things, enrichment to the defendant, the absence of justification, and the absence of a remedy at law.  *See Nemec v. Shrader*, 991 A. 2d 1120, 1130 (Del. 2010); *Garber v. Badon & Ranier*, 981 So. 2d 92, 99-100 (La. App. 3d Cir. 2008).  For quantum meruit under Florida and Delaware law, a plaintiff must allege that services were performed with an expectation of payment and that the services were performed under circumstances which should have put defendant on notice that plaintiff expected to be paid by defendant.[6]  *See Caldera Prop.-Lewes/Rhoboth VII, LLC v. Ridings Dev., LLC*, 2009 WL 2231716, at *31 (Del. Super. Ct. May 29, 2009) (*citing Hynansky v. 1492 Hospitality Grp., Inc.*, 2007 WL 2313131, at *1 (Del. Super. Ct. Aug. 15, 2007)); *Tobin & Tobin Ins. Agency, Inc. v. Zeskind*, 315 So. 2d 518, 520 (Fla. 1975).  In either case, recovery is only allowed where there is no express contract.  *Chrysler Corp. v. Airtemp Corp.*, 426 A. 2d 845, 854 (Del. Super. Ct. 1980); *Tobin*, 315 So.2d at 520; *T.L. James & Co., Inc. v. Traylor Bros. Inc.*, 294 F.3d 743, 747 (5th Cir. 2002), *citing Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 575 (La.1989) (*action de in rem*

---

[5] Count 9 also purports to seek unjust enrichment for "several other self-dealing and inequitable transactions" that are in no way identified or described (Am. Compl. ¶ 133).  Such a vague allegation cannot state a claim of any kind.

[6] Quantum meruit is not a recognized cause of action under Louisiana law.  *See Beidenharn v. Culp*, 911 So. 2d 313, 318 (La. App. 2nd Cir. 2005) ("[Q]uantum meruit is not a civil law concept and should not be used in Louisiana.").

*verso,* a counterpart to unjust enrichment, is not available where there is an independent remedy at law, i.e., a contract exists); *Edwards v. Conforto,* 636 So.2d 901, 907 (La.1994) ("[I]f there is a contract between the parties it serves as a legal cause, an explanation, for the enrichment."); *see also Bethea v. St. Paul Guardian Ins. Co.,* 2003 WL 21105099, at \*6 (E.D.La. May 12, 2003) ("First, as there is a contract between plaintiffs and St. Paul, a claim for unjust enrichment does not lie.") (citation omitted).

### 1.   Equipment, Materials and Labor Related to Gulf Tiger.

The Trustee's allegations related to the *Gulf Tiger* fail to state a claim for unjust enrichment because the Trustee does not allege a benefit conferred on HIG, GF Tiger Acquisition or any other Defendant.  In contrast, the Amended Complaint clearly alleges that any services or equipment were provided to Thoma-Sea, the builder of the boat (Am. Complaint ¶ 130).  Further, the Trustee does not even attempt to allege the absence of a remedy at law, and the Trustee's allegation that this claim is in the alternative to the extent no remedy at law is available is plainly insufficient where the Amended Complaint shows on it face that the parties' relationship is governed by a contract (*id.* ¶ 129).

The *Gulf Tiger* allegations likewise fail to state a claim for quantum meruit.  The Trustee never alleges that Gulf Fleet performed any services for HIG or GF Tiger Acquisition as opposed to Thoma-Sea (and even those "services" are not specified) (*id.* ¶ 136).  Finally, the Amended Complaint's own allegations show that the parties entered into an assignment contract with respect to the *Gulf Tiger* transaction, (*id.*), and thus the terms of the contract control. *See Chrysler Corp.*, 426 A. 2d at 854.

Finally, as explained above, the Amended Complaint fails to establish this transaction was anything less that entirely fair to Gulf Fleet.  Indeed, the transaction was a net benefit to

Gulf Fleet of at least $3 million, even if all of the Trustee's allegations are true. *See supra* at 6.

### 2. Legal Fees from the LBO.

The Trustee's unjust enrichment claim related to the legal fees from the LBO again fails because the Trustee has not even attempted to allege the absence of a remedy at law (Am. Complaint ¶ 131). Likewise, the quantum meruit claim fails because the Trustee has not alleged that it performed any service on behalf of HIG with an expectation of payment or that HIG should have been on notice of such expectation (*id.* ¶ 138).

### 3. The PSA and CSA.

The unjust enrichment claim related to the PSA and CSA fails because the Trustee has not alleged facts sufficient to determine what benefit Gulf Fleet conferred on HIG as a result of the agreements (Am. Complaint ¶ 132). In addition, the Trustee again makes no attempt to allege the absence of a remedy at law and the Amended Complaint makes clear that an express contract existed (*id.*).

As to quantum meruit, the Trustee again fails to allege what services Gulf Fleet allegedly provided to HIG with an expectation of payment from HIG (*id.* ¶ 137). To the contrary, the PSA and CSA contemplated that HIG would perform services *for Gulf Fleet* (*id.* ¶ 33). Further, the parties' relationship under the PSA and CSA is undoubtedly controlled by the terms of the contracts, and thus no claim for equitable relief exists. *See Chrysler Corp.*, 426 A. 2d at 854.

### g. Counts 11 and 12 Fail to State Claims for Partnership Liability and Single Business Enterprise.

In Counts 10 and 11, the Trustee seeks to lump all the Defendants together and hold them jointly liable as an "ordinary partnership or joint venture" or as a "single business enterprise" (Am. Complaint ¶¶ 140-150). As an initial matter, these claims again fail because the Trustee's alter ego theories do not create an independent cause of action. Rather, alter ego is only an

equitable remedy that depends on the existence of an underlying cause of action. *See In re CLK Energy Partners, LLC*, 2011 WL 1312275, at *9 (W.D. La. March 31, 2011) ("The alter ego doctrine is an equitable remedy, not an independent cause of action.") (*citing Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (request to pierce the corporate veil is not an independent cause of action "but rather is a means of imposing liability on an underlying cause of action"); *In re Grothues*, 226 F.3d 334, 337-38 (5th Cir. 2000) (alter ego is a remedy to enforce a substantive right, not an independent cause of action); *Western Oil & Gas. JV, Inc. v. Griffiths*, 91 Fed. Appx. 901, 904 (5th Cir. 2003) ("Like alter ego, the single business enterprise doctrine is an equitable remedy and not a cause of action.").

Further, the Trustee improperly relies on Louisiana law and fails to satisfy the test under applicable Delaware law. As discussed above, Louisiana courts apply the law of the state of incorporation – not the substantial relationship test – to all actions relating to the internal governance and structure of a corporation, including claims seeking alter ego type remedies. *See In re CLK Energy Partners*, 2010 WL 1930065, at *6 (applying the law of the state of formation to alter ego claims); *Patin v. Thoroughbred Power Boats, Inc.*, 294 F. 3d 640 (5th Cir. 2002) (holding that law of state of incorporation applies in action to pierce corporate veil). Thus, because the entities the Trustee seeks to join are Delaware entities, Delaware law applies. *Id.*

Under Delaware law, the Trustee must show (1) that each of the Defendants "operated as a single economic entity" and (2) that an "overall element of injustice or unfairness [is] present." *See In re CLK Energy Partners*, 2010 WL 1930065, at * 6 (*citing Harper v. Delaware Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990)). The required "injustice or unfairness" must arise from facts showing that the "corporation [is] a sham and exists for no other purpose than as a vehicle for fraud." *Id.* (*citing Off. Comm. of Unsecured Creditors of RSL*

*Com Primecall, Inc. v. Beckoff (In re RSL Com Primecall, Inc.)*, 2003 WL 22989669, at *15 (Bankr. S.D. N.Y. Dec. 11, 2003)). Moreover, the inequitable conduct must arise from a misuse of the corporate form and cannot be based solely on the allegations supporting the underlying cause of action. *Id.* (*citing Mobile Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268-69 (D. Del. 1989) ("the underlying cause of action does not supply the necessary fraud or injustice" to support an alter ego claim)).

Here, the Trustee's allegations show nothing more than a parent subsidiary relationship between HIG and its various subsidiaries (Am. Complaint ¶ 147-149). The Trustee does not even allege that the defendants failed to follow corporate formalities, let alone that each was "a sham and exist[ed] for no other purpose than as a vehicle for fraud" for HIG and/or the Individual Defendants. *In re RSL Com Primecall, Inc.*, 2003 WL 22989669, at *15. The Trustee has not, and cannot, do this. Thus, Counts 11 and 12 should be dismissed.

**h.    Count 4 Fails to State a Claim for Subordination.**

Pursuant to 11 U.S.C. § 510(b), the Trustee seeks to subordinate multiple transactions entered into between Gulf Fleet and the various Defendants (Am. Complaint ¶¶ 104-106). Such claims require the Trustee to allege, among other things, that inequitable conduct of the Defendants resulted in injury to Gulf Fleet's creditors. *See In re SI Restructuring*, 532 F. 3d at 360-361. The Trustee relies on the allegations discussed in the preceding Counts in an attempt to satisfy this standard (Am. Complaint ¶ 105). However, because each of the preceding Counts fails for the reasons discussed above, Count 4 likewise fails to state a claim.

## CONCLUSION

For the foregoing reasons, Defendants, H.I.G. Capital, LLC, H.I.G. Gulf Fleet Acquisition, LLC, H.I.G. GP-II, Inc., H.I.G. Capital Partners IV, L.P., H.I.G. Advisors IV, LLC., Gulf Fleet Tiger Holdings, Inc., Gulf Fleet Tiger Acquisition, LLC, Gulf Fleet Financing, LLC,

and Anthony Tamer, Jeff Zanarini, and Jonathon Fox, respectfully request that this Court enter an Order dismissing the Trustee's First Amended Complaint-in-Intervention in its entirety, and granting such other relief as the Court deems just and proper.

Respectfully submitted,

LABORDE & NEUNER

By: /s/ Jed M. Mestayer
    Frank X. Neuner, Jr. - #07674
    Jed M. Mestayer - #29345
    LABORDE & NEUNER
    One Petroleum Center, Suite 200
    1001 West Pinhook Road
    Lafayette, Louisiana 70503
    Telephone: 337/237-7000
    Fax: 337/233-9450

*Attorneys for H.I.G. Capital, LLC, H.I.G. Gulf Fleet Acquisition, LLC, H.I.G. GP-II, Inc., H.I.G. Capital Partners IV, L.P., H.I.G. Advisors IV, LLC., Gulf Fleet Tiger Holdings, Inc., Gulf Fleet Tiger Acquisition, LLC, Gulf Fleet Financing, LLC, Anthony Tamer, Jeff Zanarini, and Jonathon Fox*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2012, a copy of the above and foregoing was filed electronically with the Clerk of Court using the Court's CMF/ECF system. Notice of this filing will be sent to all known counsel of record by operation of the Court's electronic filing system, and via U.S. Mail to the following:

Timothy Madden
King, Krebs & Jurgens, P.L.L.C.
201 St. Charles Ave 45th Floor
New Orleans, LA 70170

Mr. Hugh M. Ray, III
McKool Smith P.C.
600 Travis, Suite 7000
Houston, Texas 77002

Louis M. Phillips
Gordon, Arata, McCollam, Duplantis & Eagan, LLC
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916

Peter S. Koeppel
Koeppel Traylor, LLC
2030 St. Charles Avenue
New Orleans, LA 70130

Andrew L. Margulis
Ropers, Majeski, Kohn & Bentley PC
750 Third Avenue, 25th Floor
New York, NY 10017

    /s/ *Jed M. Mestayer*
          COUNSEL